[Civ. No. 2587.   Third Appellate District.—March 24, 1923.]

## S. E. HENLEY, Appellant, v. H. H. BURSELL et al., Respondents.

[1] APPEAL—ALTERNATIVE METHOD—PRINTING OF RECORD.—The statute requiring the printing in the briefs of the record and evidence relied upon on appeal, where the appeal is presented under the alternative method particularly since the amendment of 1919 (Stats. 1919, p. 261), must be regarded as one for the convenience of the appellate tribunal, and for that reason directory only, and should be disregarded by the court wherever substantial justice requires it to be done.

[2] NONSUIT — EVIDENCE — INFERENCES — PRESUMPTIONS.—In passing upon a motion for nonsuit, the trial court must accept as true the evidence that is favorable to plaintiff, disregard any conflicting or contradictory evidence and indulge every inference and presumption favorable to the plaintiff, which fairly arises from the evidence produced.

[3] Id.—Quieting Title—Consideration—Incompetency of Grantor
— Fiduciary Relationship — Evidence.—In this action to quiet
title to certain real property and to have set aside and canceled
certain deeds therefor, the evidence having been such that the
trial court was required to assume that plaintiff made the con-
veyance in question without consideration, that he was at the time
of unsound mind, that he sustained to the grantee a fiduciary re-
lation, and that the subsequent grantees took without considera-
tion and with notice of the infirmity of the conveyance made by
plaintiff, the trial court should not have granted defendant's
motion for nonsuit.

[4] Id.—Specification of Grounds.—A motion for nonsuit should be
denied where there is no specification of the grounds of the motion.

APPEAL from a judgment of the Superior Court of
Tulare County. J. A. Allen, Judge. Reversed.

The facts are stated in the opinion of the court.

D. M. Edwards and R. O. Post for Appellant.

D. E. Perkins for Respondents.

BURNETT, J.—Plaintiff has appealed from a judgment
of nonsuit. [1] No brief has been filed by respondents
and on the oral argument their learned counsel relied for
affirmance of the judgment chiefly upon the point that ap-
pellant should not be heard because he had not printed
fully in his brief the evidence as required by section 953c
of the Code of Civil Procedure, as amended in 1919. In
*People* v. *Woods,* 190 Cal. 513 [213 Pac. 951], however,
it is said by the supreme court: "The statute requiring the
printing in the briefs of the record and evidence relied
upon on appeal (sec. 953c, Code Civ. Proc.), particularly
since the amendment of 1919 (Stats. 1919, p. 261), must
be regarded as one for the convenience of the appellate
tribunals, and for that reason directory only, and should
be disregarded by the court wherever substantial justice
requires it to be done."

Moreover, when the cause was pending in the supreme
court respondents moved the court "to require appellant to
print and serve upon respondents and file with said court,
a supplement to his brief in which shall be set forth in full
that portion of the record relied upon by such appellant,

including a copy of all of the evidence taken in the court below.'' Thereafter a supplementary brief—so ordered by the supreme court, according to the admission of counsel at the oral argument herein—containing, as stated by appellant, "the parts of transcript relied upon by appellant" was filed, which he claims is sufficient to meet the requirement of the rule, but respondents seem to be of the opinion that it should contain all the evidence received at the trial. To understand the evidence therein set out we must bear in mind that the action was brought primarily to quiet title to certain real property and to have set aside and canceled certain deeds therefor, and it was alleged in the complaint that "all the claim of said defendants, and each and every of them, is based upon a certain instrument purporting to be a deed dated the seventeenth day of February, 1911, and recorded March 10, 1911, . . . Tulare County Records; that said instrument herein referred to if made and executed as herein indicated, was so made, executed and delivered while this plaintiff was ill and afflicted and incompetent to transact business, all of which was well known to each and every of said defendants; that shortly thereafter a guardian was duly appointed for this plaintiff, and plaintiff was committed to the State Hospital for the insane at Stockton, California, and plaintiff was discharged from the State Hospital at Stockton and his competency legally restored on the twenty-first day of September, 1916; that during plaintiff's incompetency, as aforesaid, defendant Laura M. Henley attempted to convey certain of said real property on the thirtieth day of November, 1912, to her sister, Anna M. Bursell, . . . and this plaintiff alleges on information and belief that said conveyance was without any consideration whatever and was done for the purpose of defrauding this plaintiff out of the lands therein described and sought to be conveyed.

"That any and all persons claiming any interest whatever in or to said described premises owned by plaintiff as aforesaid, plaintiff alleges on belief, base their claim wholly either upon the alleged instrument so procured from plaintiff during his incompetency aforesaid, or from defendant Laura M. Henley, a party thereto, and during the incompetency of this plaintiff and without adequate valuable consideration and without any consideration whatever to plaintiff.''

It thus appears that the attack upon the deeds was based upon the vital facts, that plaintiff was at all times incompetent to transact business, that his incompetency was known to all the parties, and that both deeds were entirely without consideration. The complaint is undoubtedly subject to some criticism, but in the determination of this appeal we are not concerned with that question.

In said supplementary brief appellant, to show that there was evidence of a lack of consideration for the deed, quotes from the testimony of plaintiff as follows:

"Mr. Edwards: Q. Did you ever receive any money for any of this land or the water stock? A. No, sir. Q. Have you ever received any rent, issues or profits of this real estate? A. No, sir. Q. Has anyone, to your knowledge, received any rent, issues or profits for you? A. Well, I don't know who received it. It was rented. Q. So far as you know, you never received any benefits directly or indirectly from the rent, issues or profits since you returned from the asylum? A. No, sir."

Also this appears from the deposition of Laura M. Henley:

"Q. On February 17, 1911, he deeded to you various real property in and near Porterville, California. What consideration was there for that deed, or for what purpose was it made? A. I don't know. Q. State whether or not you afterward deeded this property away, and if so to whom? A. Yes, sir, I did deed it away to Annie Bursell and H. H. Bursell. Q. Mrs. Bursell never has paid you anything for that conveyance? A. No, sir. Q. No one ever paid you any money for any of the Henley lands you conveyed, nor for any stock in the Pleasant Valley Ditch Company? A. No, sir."

As indicative of the mental incapacity of plaintiff he exhibits the order of Honorable J. A. Allen, judge of the superior court of said county, dated October 14, 1912, "that said Stephen Edward Henley, because of old age, physical debility and mental infirmities is physically and mentally incompetent to manage his property and is incapable of taking care of himself and of managing his property," also an order of commitment to the state hospital for the insane, dated April 28, 1915, concluding as follows:

"It is ordered, adjudged and decreed that said Stephen Edward Henley is insane and that he be committed to and confined in the State Hospital at Stockton, California."

Quotation is also made from the testimony of plaintiff to the effect that he did not remember conveying the property in question, that he first ascertained that he had conveyed it when he came back from the asylum and examined the records; from the testimony of his daughter, Mrs. Maud Wyer, that plaintiff was not of sound mind on February 17, 1911, that he threatened to kill the family with a knife, he was growing worse mentally from 1907 to 1911; the testimony of M. B. Gibson, an intimate acquaintance, that plaintiff was entirely "without understanding, didn't know what he was doing" in 1911, that plaintiff was not competent to go about the streets alone, the witness assigning his reasons for the opinion. In addition, is the testimony of two physicians, based upon hypothetical questions, that the plaintiff was of unsound mind, and of plaintiff himself that he suffered for years with an enlargement of the prostate gland, which condition one of the physicians testified would be likely to produce "mental abnormalities often times bordering on actual insanity."

The particular portion of said section 953c applicable herein is as follows:

"In filing briefs on said appeal the parties must, however, print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court.

"No appeal shall be dismissed nor shall any appeal be decided adversely to any party for failure to print in his brief the portion of the record or any part thereof in support of his points, but in such case the court hearing the appeal shall direct such party to print and serve on the adverse party and file with it a supplement to his brief in which shall be set forth in full that portion of the record relied on by such party and not printed in any brief."

Appellant attempted to comply with this requirement and our examination of the transcript convinces us that he has been fairly successful except in the omission to print any portion of the pleadings. Of this omission respondents complain and they also assert, as already declared, that appellant should have printed the entire testimony in the

case. In this connection it may be stated that appellant at the oral argument offered to print any additional matter that this court might deem appropriate, but we see no necessity for requiring any further expense. The whole record, which is not voluminous, is before us and we perceive no reason why we may not look into it for information as to the pleadings and to ascertain whether appellant's supplementary brief is fairly representative of the showing made at the trial.

Our examination leaves us in no doubt that the court erred in granting the motion for nonsuit. **[2]** The rule that should be followed in passing upon a motion for nonsuit is so well settled as scarcely to require comment. It is sufficient to refer to *In re Daly,* 15 Cal. App. 329 [114 Pac. 787] ; *Marron* v. *Marron,* 19 Cal. App. 326 [125 Pac. 914], and *Estate of Arnold,* 147 Cal. 583 [82 Pac. 252]. Briefly stated, the trial court must accept as true the evidence that is favorable to plaintiff, disregard any conflicting or contradictory evidence and indulge every inference and presumption favorable to the plaintiff, which fairly arises from the evidence produced.

**[3]** Applying this rule, the trial court was certainly required to assume that plaintiff made the conveyance in question without consideration, that he was at the time of unsound mind, that he sustained to the grantee a fiduciary relation, and that the subsequent grantees took without consideration and with notice of the infirmity of the conveyance of February 17, 1911.

That thus was presented a case for relief in a court of equity is not and cannot be disputed. Numerous cases are cited by appellant, which sustain this view, but it seems hardly necessary to even cite them in view of the silence of respondents and the practical unanimity of the authorities. However, we may quote from *Williamson* v. *Williamson,* 41 Cal. App. 723 [183 Pac. 302], as follows:

"At the time when defendant made the deed conveying the property to plaintiff the parties were husband and wife; hence, as declared in section 158 of the Civil Code, the transaction was subject to the general rules applicable to dealings in property between a trustee and his beneficiary. Among these rules are the following: All transactions entered into between a trustee and *cestui que trust* by which

the former secures any benefit are presumed to be without sufficient consideration and under undue influence. (Civ. Code, sec. 2235.) A trustee may not use the influence which his position gives him to obtain any advantage of the beneficiaries. (Civ. Code, sec. 2231.) And if he does, it constitutes fraud for which a court of equity will grant relief. (Civ. Code, sec. 2224; *Brison* v. *Brison,* 75 Cal. 525 [7 Am. St. Rep. 189, 17 Pac. 689] ; *Jackson* v. *Jackson,* 94 Cal. 446 [29 Pac. 957].) By virtue of these provisions of the law the position of plaintiff at the time the conveyance was made to her must be deemed that of a trustee for her husband, and since she as a result of the transaction obtained title to the property from one whose relation to her was that of *cestui que trust,* the transfer is presumed not only to have been made without sufficient consideration, but as a result of undue influence. It, therefore developed upon plaintiff not only to show the execution of the grant, but also to produce evidence showing a sufficient consideration and that it was not obtained by undue influence.''

The foregoing is a sufficient answer to the claim of respondents, made at the oral argument, that plaintiff should have returned or offered to return the consideration before beginning the action. We may add that not only does the inference that there was no consideration arise from the proof of the fiduciary relation, casting upon respondents the burden of proving the contrary, but, as we have seen, there was positive evidence of the want of consideration.

[4] Another reason why the trial court should have denied the motion is found in the circumstance that there was no specification of the grounds of the motion. The record shows that ''the motion for nonsuit was made on behalf of defendants upon the ground that plaintiff had failed to prove a sufficient case.'' In *Daley* v. *Russ,* 86 Cal. 114 [24 Pac. 867], it is said: ''It is undoubtedly the settled rule that a motion for nonsuit should specify the grounds upon which it is made, and ordinarily a ground which is not stated cannot be considered.''

In *Warner* v. *Warner,* 144 Cal. 615 [78 Pac. 24], it is stated that ''the reason for the rule . . . is that if other grounds were specified, the plaintiff might overcome the objection by additional evidence, but if the defect is inherent in his cause of action, and cannot be cured, the reason for

the rule ceases to exist, and the rule itself has no application.''

In the Williamson case, *supra,* the motion for nonsuit was made ''on the ground that they [the plaintiff] have failed to make out a *prima facie* case; and on the further ground that they have failed to make out such a case, if the case were tried before a jury, as would warrant them in returning a verdict for the plaintiff.'' This was held to be insufficient, the court stating that the defendant should have pointed out specifically his objection and thereby have given his opponent ''an opportunity to introduce evidence to meet the same, subject to the ruling of the court upon an application so to do.'' Such practice is, of course, commendable, as it encourages the trial of causes upon their merits. The number of cases reversed on appeal from a judgment of nonsuit should be a warning to counsel to exercise the greatest care in the matter of such motions.

We feel confident that under well-established principles the judgment is erroneous, and it is therefore reversed.

Hart, J., and Finch, P. J., concurred.